MECHANICS STATE BANK *v.* TUF-NUT GARMENT MFG. CO. *et al.*

(Division A. May 1, 1939. Suggestion of Error Overruled May 29, 1939.)

[188 So. 278. No. 33690.]

590

Roach & Jones, of McComb, and W. S. Henley, of Hazle-hurst, for appellant.

592

F. D. Hewitt and R. B. Reeves, both of McComb, and Green, Green & Jackson, of Jackson, for appellees.

Argued orally by **W. S. Henley**, for appellant, and by **Forrest B. Jackson**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This case began as an action at law by the appellant on a promissory note, and was, by request of the appellees, transferred to the chancery court. It was there tried on bill, answer and proof, resulting in a decree dismissing the bill of complaint.

The note sued on was executed on January 31, 1932, payable to the appellant, is signed by the appellee garment company and endorsed by the appellees Denman and Kramer. The evidence for the appellees is to this effect: In May, 1927, an arrangement was made by the McComb City Chamber of Commerce with the Tuf-Nut Garment Manufacturing Company of Arkansas to establish a branch of its manufacturing business at McComb City, provided that $50,000 of new stock to be issued by it should be purchased by citizens of that city. At a meeting of McComb City citizens on May 31, 1927, forty persons, among whom were Denman and Kramer, signed an agreement reading as follows: ''Witnesseth: That we, the undersigned Guarantors hereby contract and agree to underwrite $50,000.00 sale of stock in the Tuf-Nut Garment Mfg. Company of Little Rock, Arkansas, said stock to consist of four hundred (400) shares of 7% preferred Stock and four hundred (400) shares of Common Stock of no par value, the stock to be sold in units of one share at $125.00 per unit.'' Two or three of the signers of this instrument were officers of the appellant bank, though that fact does not appear from their signatures. On the same day, another instrument was signed by the Tuf-Nut Garment Mfg. Company of Arkansas and a committee representing these guarantors, which, among other things, set forth that the garment company would establish a branch of its firm at McComb City, add to its board of directors two members to be elected by the McComb City subscribers to its capital stock; and that in event it should discontinue its McComb City business, it would repurchase its capital

stock sold pursuant to the agreement. One of the stipulations being that: "as to the payment of the $50,000.00 of stock in said Company, that said amount is to be paid in as follows: $10,000.00 on July 1, 1927, or as soon thereafter as the machines arrive, and the residue of the remaining $40,000.00 to be paid in eight equal installments of $5,000.00 or more each month thereafter consecutively until paid." About $35,000 of the $50,000 of stock was sold, and in order to raise the remainder of the money so that the garment company would begin business at McComb, a meeting of these guarantors was held and a committee consisting of L. Z. Dickey, W. T. Denman and X. A. Kramer, was appointed to execute a note or notes for this balance to the garment company. Dickey was president of the appellant bank. Three short time notes were executed to the garment company by the members of this committee, their signatures disclosing that they were acting as a "committee for local shareholders." These notes were endorsed by the garment company and sold by it to the appellant for their face value. On March 28, 1928, there was a balance due on these notes of $6880, and a new ninety day note was executed therefor payable to the appellant, signed by Dickey, Denman and Kramer, without their signatures indicating that they were acting in any representative capacity. The note was renewed several times by notes for varying amounts signed "committee for local shareholders, Tuf-Nut Garment Company," and either signed or endorsed by Dickey, Denman and Kramer. In the meantime, the Tuf-Nut Garment Mfg. Company of Arkansas became involved in financial difficulties, its interests at McComb City were taken over by the local shareholders, and vested in a new Mississippi corporation of the same name.

On February 10, 1930, the last of the above notes was renewed by a ninety day note to the appellant for $6162.74 signed Tuf-Nut Garment Company by "L. Z. Dickey, Pres.," and endorsed by Denman and Kramer. There-

after, renewal notes for the same amount, signed and endorsed as was the one on February 10, 1930, were executed every ninety days, the last note, the one sued on, being dated January 31, 1932.

The decree does not indicate on which of the several claimed defenses to this note the court below based its decree, all of which will be here discussed.

The appellees say that the plan devised for securing the establishment of a garment factory at McComb City was a joint adventure of those participating therein, and consequently as the appellant was a party thereto it has no cause of action against any of the other parties thereto for losses incurred by it pursuant to the joint adventure. We will assume, but merely for the purpose of the argument, that such a joint adventure here appears, and that the appellant had the power to become a party thereto. Nevertheless, the contention must fail.

A. The only connection which the appellant is shown to have had with this joint adventure was to discount the note executed to the Tuf-Nut Garment Mfg. Company, and to accept renewal notes for the debt evidenced thereby. So doing did not make it a party to the joint adventure. It is true that some of the appellant's officers personally participated in this joint adventure, but their so doing did not make the appellant a party thereto.

B. Joint adventurers may become liable to each other for debts and losses incurred pursuant to the joint adventure if the assumption of such liability is agreed to by them. The original note discounted by the appellant and its renewals charged the makers and endorsers thereof with personal liability to the appellant therefor, on the faith of which they were accepted by the appellant. Chandler v. Cooke, 163 Miss. 147, 137 So. 496.

2. According to the evidence for the appellees, which was contradicted by evidence for the appellant, when these notes were executed, it was understood and agreed that the endorsers thereon were not to be held personally liable for the payment thereof. This agreement, the ap-

pellees say, was valid, and estops the appellant from claiming that these endorsers are liable for the payment of the notes. The evidence discloses that this agreement or understanding, if such there was, was among the persons who had guaranteed the sale of the stock of the garment company, but not that the appellant was a party thereto. Moreover, the legal effect of a promissory note cannot be varied by a prior or contemporaneous oral agreement.

3. A portion, probably the greater part, of the McComb City purchasers of stock in the Tuf-Nut Garment Mfg. Company of Arkansas executed promissory notes in payment therefor. Many of these notes were placed with the appellant for collection. A portion of these notes were collected and applied under the direction of the guarantors committee in part payment of the initial and probably one or two of the renewal notes. The makers of the remainder of these notes declined to pay them. The appellees say that the appellant negligently failed to collect these notes, which, we will assume, if collected, would have produced sufficient money to pay off the notes here sued on, and because of this negligence, the appellant is estopped from collecting the note sued on. These notes were not delivered to the appellant as collateral security for the series of notes of which the one sued on is a part, and the appellant was not authorized, and did not agree, to coerce the makers thereof into paying them.

4. In this connection, also, the appellees say that the appellant should have collected the notes from the persons who guaranteed the sale of stock in the garment company, the notes having been given in carrying out that guaranty. This guaranty did not run to the appellant, it made no agreement to look thereto, and had no interest therein.

5. Finally the appellees, Denman and Kramer, say that they cannot be held liable on their endorsement of these notes for the reason that the renewal note of April 24, 1929, and the notes executed prior thereto bore the

endorsement of L. Z. Dickey, whose endorsement does not appear on the note executed July 24, 1929, or on any of the subsequent renewal notes. They say that when they endorsed these notes they did so on the assumption that Dickey would also endorse them. When they endorsed the notes nothing was said to them as to who would or would not endorse them, and they made no inquiry relative thereto. Such being the case, they can not complain that the appellant accepted the notes without Dickey's endorsement. Had the notes been endorsed and delivered conditioned on the bank's obtaining Dickey's endorsement thereof, a different question would arise, but the mere fact that Dickey had endorsed the previous notes does not of itself alone make the endorsements of Denman and Kramer conditional on his continuing to endorse the renewal notes.

The note sued on provides for a reasonable attorney's fee, and the only evidence as to what a reasonable attorney's fee would here be is that it would be fifteen per cent of the principal and interest of the note.

The decree will be reversed and a decree rendered here for the appellant for the principal and interest on the note; to which will be added fifteen per cent thereof to cover the attorney's fee.

So ordered.